## PALMER COOKE & CO., Respondents, *v.* WILLIAM STEWART, Appellant.

The power of this Court to reverse an order of a District Court granting a new trial, is novel, and must be exercised with extreme caution.

Where the record discloses that the District Court might well have granted or refused a new trial without impeachment of its legal discretion, the appeal will be dismissed.

The case of Stewart *v.* Palmer Cooke & Co. settles the doctrine in this case.

APPEAL from the District Court of the Fourth Judicial District.

This was an action for trespass founded upon a lease from defendant to plaintiff for certain premises in San Francisco, for one year from the 1st April, 1851, at the rent of one hundred dollars per month, payable in advance, which plaintiff avers he paid, &c., and continued in possession up till about the 25th day of June, 1851, for all of which month he had paid the rent in advance, &c., when the defendant with force, &c., entered and took possession of the said demised premises, and prevented plaintiff from using, &c. the same, and leased it to other parties, and put them in possession thereof; damage $5000.

Defendants in their answer deny all the allegations in the said complaint, or that plaintiff has sustained any damage, &c.; and aver that on the       day of       the buildings on the said premises were consumed by fire, and thereupon the said plaintiff abandoned the same before the entry by defendants; and the premises so abandoned, the defendants entered upon and relet as

stated in the said complaint, to one, who proceeded to erect a new building thereon, &c., after which the plaintiff claimed the premises, and defendants and their said tenant offered the same to the plaintiff, if he would pay the reasonable value of the said new building, and offered plaintiff other premises at a cheaper rent, &c., which plaintiff refused, &c., and brought this suit.

The case was tried by a jury, who found for the plaintiff $2500 damages, for which judgment was entered. And on the 15th January, 1852, a new trial was granted by the Court; and from the order granting a new trial, the defendants appealed.

The counsel for the respective parties agreed that the statement and arguments urged for a new trial in the Court below, be the statement read in the Supreme Court on appeal from the order granting a new trial. This statement embraces the reasons filed on the motion to vacate the verdict and for a new trial, and the testimony produced on the trial of the case. The reasons urged were, 1st. That the verdict was excessive; 2d. Because the evidence did not justify it; 3d. Because it was against law, and contrary to the instructions of the Court; and 4th. Because it was an outrage upon law, justice, &c., and tending to bring the trial by jury into disrepute. The testimony on the part of the plaintiff, consisted of the lease as stated in the complaint. A receipt for one hundred dollars for the rent paid in advance for the month of June, 1851, and the testimony of several witnesses, which show that the plaintiff went to defendants' office to pay the rent of the premises due on the 1st July; that one of the defendants told the plaintiff that they had relet them. Plaintiff demanded possession of the ground, and offered to pay the month's rent for July in advance, which defendants refused to accept, saying they had looked for plaintiff, and could not find him, and supposed he had abandoned the lot, and therefore they had relet it. The building on the lot was consumed at the fire of the 22d of June, 1851; there was a new building partly up when the plaintiff went to pay the rent, and was in possession of the tenants of the defendants. The plaintiff had made arrangements to rebuild after the fire. The premises rented by the plaintiff for four hundred dollars per month up to the time of the fire, and cleared about three hundred dollars, after paying the ground rent besides reserving for his own use an upper room, worth

twenty-five dollars per month.  Plaintiff was up the river, when the new building was putting up.  The witness was to have had an interest in the new building, an equal share paying half the expenses; this was arranged with the plaintiff a day or two after the fire.  The one hundred dollars per month was for the ground rent without the building, which belonged to the plaintiff.  Witness had been interested with the plaintiff in the former building, but had sold out after the May fire; was his agent to pay the rent, and put up the new building, which he delayed on account of the high price of carpenter work.

Another witness for plaintiff testified that defendants offered the plaintiff the lot, if he would pay the cost of so much of the new building as was on it, and which could be partitioned off. The plaintiff replied that the new building would not answer his purposes—that he wanted the ground.  That defendant then told the new tenant to go on with the new building, and to kick the plaintiff off if he come on the premises.  Plaintiff refused to take other land, but said he would have that and no other, saying, "I want my land;" and again offered the $100, which was refused.  The testimony on the part of the defendants went to show that defendants had endeavoured to compromise the matter, by the offer of another lot, &c.; but without success.  And some further testimony as to the value of the property, was given; that in the opinion of the witness, if rebuilt, the property would rent for as much as before the fire; that he thought the plaintiff after the fire, could have rented the ground at an advance of $50 per month over the $100 reserved by the lease.  Another witness (for defendant,) thought the ground rent in July, 1851, not worth over $75 per month, and stated the rents paid for other property in the vicinity.

*S. W. Halladay* and *E. Cook*, for appellants.  There is no case made out, which comes within the statutory provisions for new trials.  Practice Act, sect. 193, p. 81.  In all those cases, to warrant a Court in setting aside a verdict, &c., some irregularity, misconduct, or accident, (or some other of the causes mentioned in the statute) must appear to have influenced the minds of the jury improperly.  And this must *appear* by competent proof; the mere allegations of parties, is not sufficient, even if

the amount of the verdict should not accord with the opinion of the judge. By our constitution and laws, the opinion of the jury is regarded above that of the judge, in question of damage.

This verdict was made up in view of all the facts, and under the instructions of the Court. And of the facts, the jury are made the exclusive judges. Practice Act, sec. 165, p. 76. The same act defines the duties of the Court as separate and distinct from that of the jury. The plaintiff claims his verdict as a vested constitutional right. Constitution, art. 1, sec. 3, says: "The right of trial by jury, shall be secured to all, and remain inviolate forever." What becomes of this right, if the Court may set aside verdicts which do not correspond with its own views? and the constitution forbids the Court to charge juries on matters of fact, but may state the testimony, and declare the law. Art 6, sect. 17. In actions sounding in tort, the consent of the Court is required to the waiver of a trial by jury. Prac. Act, sec. 179, p. 78; but if the Court may set aside a verdict, fair and unimpeached, in one case, it may do so in the next, and so on, till one shall be obtained to correspond with its views. Why not then let the Court charge the jury upon the facts in the first place, or submit the case at once to the judge?

The books distinguish between cases of injuries, the result of inability, and those that are wilful, mixed with malice or fraud; in the latter case the damage may be assessed, sufficient both to compensate the sufferer and to punish the offence. So the Court charged the jury in this case, and the jury so found and assessed the damage, in view of the charge and the facts. The case shows actual damage to the full amount of the verdict, besides a strong colouring of fraud and malice, &c.

If an inferior Court exercise its discretion in granting a new trial, without showing a legal ground for its order, this Court may review it and see whether a legal discretion has been exercised. See Stat. p. 106, sect. 347, Prac. Act. Where Courts refuse to disturb verdicts, see Graham on New Trial, 410, 413, 431, 439. On the measure of damages, Sedgwick, 35, 39, 41, et seq. When one party puts an end to an executory contract by refusing to fulfil, the other is entitled to an equivalent in damages for the gains or profits, which he would have realized

from performance. 7 Hill's Rep. 61. But the damage proved was $300 per month for ten months unexpired of the lease.

*R. A. Lockwood,* for respondent.

The granting of a new trial rests with the sound discretion of the Court.

This Court is not asked to disturb the verdict of a jury, but the appellants seek to disturb the decision of the Court below upon a question resting in its discretion; and this Court not having heard the witnesses, nor observed their *manner,* &c., is not so competent to determine whether a new trial was proper. By reversing the order, great injustice *may* be done the respondent; by affirming it the appellants can obtain justice on the new trial. This action is not for such a *tort* as comes within the cases in which vindictive damages are allowed. It is not every *technical tort* that does, as in actions of *trover.* And the Court may grant a new trial for excessive damages in any action of *tort,* however aggravated the tort may be. McConnell *v.* Hampton, 12 John. 234. The Court below is alone competent to judge whether the damages were excessive, betraying prejudice, &c. But in this case the verdict is so glaringly excessive that even this Court cannot refuse a new trial.

By the statute this Court may grant a new trial, in its discretion, for other causes than those enumerated, and this even without motion. Statutes 1850, p. 451, sect. 254, 4th clause.

The contemplated profits from the new building, were too remote to be considered in the question of damages, and so the Court instructed the jury; the building was not erected, and might never be erected. The injury on the part of the defendants was so far from *wilful,* that they offered every reparation. Defendant held back till he saw the new building going up, but for which he would never have come forward. His view was speculation. The entry of respondents is alleged to have been on the 25th June, 1850, and the suit was brought 29 July, 1851. The ground rent was $100 per month. The strongest witness for the appellant only values the ground at $50 per month over the rent; consequently, if the action is trespass, the damages could not exceed $50.

There was no proof that any of the respondents ever entered the premises.

If the action is regarded as founded on the contract, then allowing that the appellant could recover for the whole ten months, the excess of value over the ground rent could not exceed $500; and the weight of evidence is, that the value was less than the ground rent, in which view the appellant would be entitled only to nominal damages.

The opinion of the Court was delivered by

HEYDENFELDT, Justice.   The power of this Court, to reverse an order of the District Court granting a new trial, is novel, and must be exercised with extreme caution.

In this case, as it is disclosed by the record, the District Court may well have granted or refused a new trial without impeachment of its legal discretion.

The correct doctrine has been heretofore settled by this Court in the case of Drake, et al. *v.* Palmer, Cook & Co., and upon the authority of that case, the appeal in this is dismissed with costs.